May it please the Court. Your Honours, if I may reserve one minute for rebuttal time. You certainly may do so. Just watch the clock. Thank you, Your Honours. Your Honours, the immigration judge in the matter at bar had no substantial evidence to support her adverse credibility finding. Throughout the record we can evidence that several times the immigration judge reviewed facts to find inconsistencies on matters that did not go to the heart of the claim. For example, very specifically, a very clear review of the record of proceeding would show that the respondents, when examined by their own attorney, cross-examination and by the court, were actually consistent on matters that went to the heart of their claim. For example, both of the respondents agreed on the date of the robbery and ransacking of their apartment. But let me ask you about that, because that was one of the things that the IJ was concerned about. And ask both of the petitioners, why is your testimony so different from the police report? Explain to me why that doesn't, that inconsistency isn't sufficient. Your Honour, that's I think an excellent focal point. The police report was a report prepared by a third party, namely the Egyptian police. The crux of the claim here is that these people, the respondents, were being persecuted by Islamic fundamentalists, by a majority, a country that is a majority Muslim, and a police force that is essentially renowned for being corrupt. The factors that the immigration judge focused on in this case, for example, were the fact that the police report cited that they lived on a different floor level than the respondents had told her. For example, specifically in this case, that the police report stated that they resided on the sixth floor, where they had testified that they resided on the seventh floor. Another factor that the immigration judge pointed out in the police report was having to do with who had stumbled upon the scene first, whether it had been the respondents or whether it had been, in fact, a third party witness. The police report had wide gaps in terms of consistency of what the respondents said had happened, in fact, and what the police report claimed had happened. The respondents at all times stated to the immigration judge that they had issues with the police report and that the police had good reason not to side with them, but to side with the person that the respondents were accusing, who was, in fact, their persecutor, a Mr. Lateef. Am I mistaken? I thought that the petitioner had originally said the police report is accurate and then changed that testimony later on in the hearing. Actually, Your Honor, if I may state that, I don't believe that the petitioners had actually at any point said that the police report was accurate. What they had wanted to introduce the police report for was for the purpose of trying to assert that the event that they complained of actually occurred, namely the robbery and ransacking of their apartment. The petitioners and respondents at the trial court level actually were stating that the police report was defective, and that it was deliberately defective, that the police were actually attempting to frame the defendant. They were attempting to help the assailant and the person that the respondents or petitioners were accusing of having caused the damage in the incident of the 24th of January, 1998. But aren't those all facts for resolution by the immigration judge? I beg your pardon, Judge? Aren't those all factual issues for resolution by the immigration judge? They certainly are, Your Honor. However, the point of contention becomes, is this a matter that goes to the core of their heart of their claim as asylum applicants, or is it a matter that is outside of that, of the crux of their claim? It is our submission, respectfully, that a police report prepared by a third party, a third party having an interest in protecting the potential assailant. We don't know that, do we? Factually, we don't know that, Your Honor. Is there any evidence on the record that the police were intending to benefit the assailant here? Not on the record of proceeding, Your Honor. However, I do believe that the immigration judge did have before her ample evidence of country conditions in Egypt, which states that police corruption and anti-Christian behavior is rife in Egypt. Counsel, let me ask you a question. Judge Gould, you may ask a question. Thank you. I have a question on this. I understand the inconsistency in the police report and the testimony in terms of details and this and that. But my understanding was that the I.J. asked Mr. Risk to explain the inconsistency. Is that correct? And that he gave an explanation for it, what he thought was the explanation. So my question to you is this. After he gave his explanation, did the I.J. address his answer as to why there was inconsistency? Because we have a line of cases. One not too old one that I prepared was called Soto Alarte. And a couple of prior ones, Osorio and Campos Sanchez, that say that if an alien addresses inconsistencies, that the I.J. is supposed to address the explanation. Was that done here? Your Honor, respectfully, the petitioners submit that that was not done. Not in the fashion that Campos Sanchez and the whole line of cases that have come from this court and the Supreme Court would demand. For example, in reference to the biggest claim in this case, the 50-ton elephant in the room, which was the claim about rape, the immigration judge did not address this in any fashion, whether in direct examination of the witness, which was the female petitioner, or in fact in her oral decision. If, in line with those cases that Your Honor just cited, the immigration judge had been, had offered the respondents an opportunity to explain, clarify. For example, if I was the immigration judge and one of the applicants before me complained of a rape, I think that it would be appropriate for the immigration judge to say, Your Honor, it would be incumbent upon me to inquire further of that applicant what the conditions, circumstances surrounding that incident were, the date and the time to establish credibility. I believe that in the absence of that, an adverse credibility finding is actually weak. And particularly this immigration judge's credibility finding was wanting in that regard, Your Honor. Now, did the IJ relating to this incident, did she ask the I.T.I. I guess her name was, whether the I.T.I. was a criminal case, whether the I.T.I. was a criminal case, or whether the I.T.I. was a criminal case. Why she decided to go by herself into this area. And then, as I recall, the I.J. also asked, why did you pass out? Did somebody strike you? So it seems to me, recalling reading the transcript, that there were at least some questions questioning whether this was a likely scenario, and the I.J. did specifically address that. Am I right on that, in my recollection there? You're absolutely right, Your Honor. The I.J. did address that with the female respondent, Mrs. Atiyah. However, the manner in which the questioning occurred was more of a second-guessing of why had Atiyah decided to go on the specific day to obtain a school record. And the respondent petitioner at this level had an answer, in that she needed to get school records for her child in order to register her child in another school district, because she had been forced to run away from school. And she had been forced to run away from the area of her residence. Counsel, I've got a question about the exhaustion here. In the brief to the B.I.A., it refers to the appellant requesting that the B.I.A. grant his request. I don't see anything in the brief that indicates that the claims of Atiyah, John, and Joseph were exhausted. I'm afraid I'm not aware of that. So we can't deal with their claims, then? They're not adequately presented here at this stage. Oh, Your Honor, I believe that you do have jurisdiction to address their claims, to the extent that the B.I.A. adopted all of the immigration judge's findings. Therefore, the matters before the – any matter that was basically adjudged by the immigration judge would be an appropriate matter for this Court to consider. But your client only appealed for himself, not for the B.I.A. Your Honor, I believe that immigration appeals, when – what happens in immigration cases is that the cases become riders. So the lead petitioner, the lead applicant, if he has family members and dependents, the riders usually follow along in the appeal. I believe that's the usual administrative manner in which they address the appeals from the immigration court to the B.I.A. Well, in that case, then, you treat all four together, and we don't differentiate between or among the four. I believe that is correct, Your Honor. Thank you, counsel. My time is almost up. If I may, if there are any questions. No further questions. Thank you, counsel. Thank you, Your Honor. I appreciate the time. We'll hear from the government. May it please the Court. I'm Susan Green for the government. First, I'd just like to start out with this question about the heart of the claim, which, of course, is – there's no question that there are many, many inconsistencies that the immigration judge printed out. And I understand that their only legal argument is whether those inconsistencies went to the heart of the claim. I've really identified five inconsistencies that I think go to the very heart of the claim. And the first one I wanted to talk about was this police report that's already been discussed some. But I will say that, Judge Akita, it's correct that they, of course, offered the police report into evidence. And when they first offered it, they espoused it. They didn't just offer it. At page 203 of the record, Mr. Risk says – he interrupts his testimony and says, I want to say that this report is true and correct report. That's a verbatim quote. Then when it came out on cross-examination that the report actually contradicted their account in two important ways. First of all, the police report did not mention anything about the vandalization of their religious objects and the Muslim graffiti in the apartment that they claimed in their testimony. The report said nothing about that. All it did was enumerated the number of items that were stolen. That's the first problem with it. The second problem is more important still. And that is twice in the report it specifically says that the Risk did not accuse anyone, that there was no suspect. When that was brought out during the trial, that's when they made the 180-degree switch and Mr. Risk said this is a fake report. So that was a complete contradiction in his own testimony. And he was asked about why would the police make a fake report. And the response that he gave made no sense. The heart of his claim is that the police are now prosecuting him for having accused this neighbor. That is why he said that he left the country. That is the heart of his claim. And yet this police report, if the police truly had concealed the fact that he had made this accusation, that would have completely defeated the police's attempt to accuse him of this crime of permitting religious discord by accusing his Muslim neighbor of a crime. So, you know, he's argued that the problems with the police report are minor like what floor they were on. I mean, those are discrepancies. But the immigration judge really pointed out that there are key discrepancies that go to the heart of the claim. And that is if the police were prosecuting him for accusing his Muslim neighbor, they would not cover that up. And that was it was brought out at trial. And it's key. Counsel, my my question was this. If he tried to address the inconsistencies, which I think he was given a chance to do that. Yes. Did the IJ thereafter in the decision address. Did the IJ address his answer and say why it didn't make sense if it if it didn't. Because it seems to me so to a large day and Campos Sanchez and Osorio require something like that. And, you know, that's so to a large day without getting into all the detail. I recall that one of the problems in that case address was a police report from the police in Peru that didn't mention the shining path. Which which the alien said that was just, you know, the government was afraid to mention them. And, you know, you could have situations where police don't include something and it's not really material. So, I mean, did the IJ address his answers? Well, first of all, I mean, your remark that it was not really material is would be a huge distinction between this case and so to a large day. Because in this case, the explanation that he gave actually would defeat his claim. His explanation would actually make it seem that the police are not after him for accusing this Muslim neighbor that the police haven't noted that he accused the Muslim neighbor. So that would be a big distinction. But the other thing is that in this case, the immigration judge laid out many, many inconsistencies. And at the end, she said that at the end she concluded that it was the weight of all these many inconsistencies that wound up making her conclude that they were not credible. I just looked when you brought that up about whether she discussed his explanation in particular. She actually she simply includes that in a list of things that, you know, she's considering the explanations. She didn't comment on it. But, you know, I think it's important that the explanation actually would defeat his claim. I mean, she didn't mention that, although it was mentioned at trial. I don't have the site, but it was mentioned at trial that his explanation actually shoots himself in the foot. It would hurt him. So I don't think that it's an explanation that, you know, might have succeeded if the immigration judge had just paid more attention to it. And if I may, did that answer your question? You did. Thank you, Judge. Could I ask you to address just the procedural posture issues? When I read the BIA's opinion, it's only addressing Mr. Risk's adverse credibility determination, specifically defines respondent as him only and then addresses only his claim. So does that mean that was Atiyah's claim before the IJ and so she erred in not resolving it? Help me understand where we are procedurally. No, I think that there's a bit of ambiguity procedurally. I think the immigration judge clearly addressed Ms. Atiyah's claim. Both, as you know, both Petitioners did file asylum claims in their own right, which is sometimes not done. But weren't they consolidated under Michaels? Yes, Your Honor. They were consolidated. And then I think where the confusion came is on their appeal to the board, the appeal is mostly drawn to refer to the husband. So the BIA specifically, I misspoke. I didn't mean the IJ obviously addressed both. But the BIA addressed only his specifically. And so does that mean if Atiyah's claims were appealed to the BIA, did the BIA fail to address that argument and therefore we would need to send it back for the BIA to address that argument? How would we avoid doing that? Two things. I think, first of all, I mean, I think that, you know, we very much could have argued that they didn't both appeal. I mean, if you look at their appeal brief, it usually only responds to the husband. Well, that was the question I raised. Right. Right. And certainly we could have briefed it that way. We could have briefed it more aggressively that she did not preserve her claim. Are you waiving that argument? Is that what you're telling us? No, I'm not waiving it. I simply say that in some ways it doesn't make that much difference because both of their claims were argued side-by-side. They were considered side-by-side. They were considered thoroughly. I think it would not at all be incorrect to say that they waived their claim in front of the BIA. And I think the BIA's, you know, the BIA was perhaps misled by their brief. If they both intended to appeal, the BIA certainly relied on their, the way their brief was written and only addressed. Well, then, assuming there is no exhaustion problem, is the decision by the BIA defective because it failed to address Atiyah's problem? No. I mean, the BIA considered the, affirmed and adopted the immigration judge's opinion, and she clearly adopted that. Well, what page are you at? That is on page five of the record. And I would say this. And respondent is specifically defined as the man only. So I'm looking for where the BIA addressed her claims, if those claims were properly before the BIA. It did not address them separately, and that's because their brief did not raise them separately. So the BIA did not err on that. I mean, you know, this is something that's often not made entirely clear. And, you know, perhaps our brief, we could have been more aggressive on the exhaustion issue. And I certainly don't waive it because I looked at it myself and thought, you know, they didn't appeal for her. What do we do with footnote one on page four? The respondents consist of a married couple and two children for purposes of reference to the respondent. We'll refer to the lead male respondent. Well, then in that case, I think that what you should say is that it was not exhausted, and the BIA probably considered it should be his appeal. We don't want to be making arguments for the government, counsel. Well, I mean, they have not argued this. They did not make an issue of this, and, you know, there's no substantive difference in what the BIA would have done had they both appealed, and our brief did not make an issue of it. But at the very least, it would be completely unfair to accuse the BIA of having overlooked her claim when they didn't brief it. So, you know, I think that focusing on that problem, I think the proper thing then would be to say that she didn't exhaust. All right. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next in Hong v. Grant.
judges: O'scannlain, Gould, Ikuta